GARY M. RESTAINO
United States Attorney
District of Arizona
KRISTINA L. MORRISON
Assistant U.S. Attorney
Arizona State Bar No. 029646
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
Email: Kristina.Morrison@usdoj.gov

*Attorneys for Defendant*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| E.C.B., on behalf of himself and his minor child, J.R., <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, <br><br> Defendant. | No. CV-22-00915-CDB <br><br> **MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

    Defendant United States of America respectfully moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. As discussed below, Congress has not waived sovereign immunity for the types of claims asserted in this action. As such, the claims are jurisdictionally barred. This motion is based on the following memorandum of points and authorities and all matters of record.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.      OVERVIEW.**

    Plaintiffs J.R. (now 12 years old) and her father E.C.B. are Guatemalan nationals presently living in Guatemala.  ECF No. 1 ("Complaint"), ¶ 13.  In May 2018, E.C.B. unlawfully entered the United States with his minor child and was detained, separated from J.R., and then removed to Guatemala after approximately twenty-one (21) days. Complaint, ¶¶ 12, 71-72, 77-78, 83-87.  J.R. was transferred to a facility in Miami, Florida

for approximately five (5) months before being reunited with her family (including her father) on or around September 25, 2018. *Id.* ¶¶ 88-91.

J.R. and E.C.B. bring this action under the Federal Tort Claims Act ("FTCA"), seeking monetary damages for alleged injuries caused by (1) Defendant's implementation of a policy to refer for prosecution all individuals suspected of illegally entering the United States at the United States–Mexico border, including parents traveling with children (referred to herein as the "Zero-Tolerance Policy"), and (2) the conditions of confinement and treatment of Plaintiffs after they were separated. Plaintiffs assert claims for intentional infliction of emotional distress, negligence and loss of consortium. *Id.* ¶¶ 103-129.

The United States has denounced the prior practice of separating children from their families at the United States–Mexico border and "condemn[ed] the human tragedy" that occurred because of the Zero-Tolerance Policy. *Establishment of Interagency Task Force on the Reunification of Families*, Exec. Order 14,011, § 1, 86 Fed. Reg. 8273, 8273 (Feb. 5, 2021). The Biden Administration has committed the federal government to "protect family unity and ensure that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law." *Id.*

Although the United States does not defend the wisdom of these now-revoked policies, established legal principles dictate that the Court should not reach the merits of Plaintiffs' FTCA claims. Plaintiffs' alleged injuries are not compensable under the FTCA because Congress has not waived the federal government's sovereign immunity for claims for money damages in these circumstances. Although the United States recognizes that district courts adjudicating FTCA claims arising out of the Zero-Tolerance Policy— including in this District—have reached differing conclusions on the threshold jurisdictional arguments presented in this motion to dismiss, the United States respectfully submits that on the better reading of the law, Congress has not waived sovereign immunity and Plaintiffs may not recover under the FTCA.

## II.    FACTUAL AND LEGAL BACKGROUND.

### A.    Statutory framework for noncitizens[1] entering the United States.

Pursuant to Title 8 of the U.S. Code, when a noncitizen enters the United States between official ports of entry, he or she may be prosecuted for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C § 1325(a). A violation of section 1325(a) is a misdemeanor that is punishable by a fine and 'imprison[ment] not more than 6 months" for a first infraction. *Id*. A subsequent violation may result in imprisonment of not more than two years. *Id.* Reentering the United States without authorization after having been previously removed is a felony. 8 U.S.C. § 1326. An individual who reenters the United States without authorization after having been removed "shall be fined under title 18, or imprisoned not more than 2 years, or both." *Id.* § 1326(a).

Noncitizens who arrive in the United States, including those who arrive between ports of entry, are considered "applicant[s] for admission" and are "inspected by immigration officers" to determine their admissibility to the United States. 8 U.S.C. §§ 1225(a)(1), (a)(3), (b). Individuals arriving in or present in the United States who, following inspection, are deemed inadmissible, are subject to removal from the United States and, as appropriate, detention pending such removal. *See id*. §§ 1225(b); 1226; 1357. These provisions apply to both adults and children. Detention of noncitizens with final orders of removal is governed by 8 U.S.C. § 1231(a). It authorizes detention in two circumstances. "During the removal period," the Attorney General "shall" detain the individual. *Id.* § 1231(a)(2). "[B]eyond the removal period," the Attorney General "may" continue to detain certain individuals specified in the statute or release them under an order of supervision. *Id.* § 1231(a)(3). The removal period specified in § 1231(a)(1)(A) lasts 90 days, and begins on the latest of the following: (1) the date the order of removal becomes

---

[1] This brief uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

administratively final; (2) if the removal order is judicially reviewed, and if a court orders a stay of the removal of the individual, the date of the court's final order; or (3) if the noncitizen is detained or confined (except under an immigration process), the date the individual is released from detention or confinement. *Id.* § 1231(A)(1)(B). The federal government possesses statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *Id.* § 1231(g)(1). In some cases, the Department of Homeland Security ("DHS") may exercise its discretion to release a noncitizen from custody. *See, e.g.*, 8 U.S.C. §§ 1182(d)(5), 1226(a)(2).

### B. Statutory framework for immigration custody relating to unaccompanied minors.

Federal immigration law authorizes the United States to provide for the custody and care of minor children who are present in the United States without lawful immigration status. Specifically, the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status." 6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied alien child" or "UAC" is defined as a child: (1) who "has no lawful immigration status in the United States"; (2) who "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3). ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child." *Id.* § 1232(c)(2)(A). However, ORR "shall not release such children upon their own recognizance." 6 U.S.C. § 279(b)(2). Rather, once in ORR custody, there are detailed

1   statutory and regulatory provisions that must be followed before the child is released to an

2   approved sponsor. *See* 8 U.S.C. § 1232(c)(3). Congress requires that "an unaccompanied

3   alien child may not be placed with a person . . . unless the Secretary of Health and Human

4   Services makes a determination that the proposed custodian is capable of providing for the

5   child's physical and mental well-being" and that "[s]uch determination shall, at a

6   minimum, include verification of the custodian's identity and relationship to the child, if

7   any, as well as an independent finding that the individual has not engaged in any activity

8   that would indicate a potential risk to the child." *Id.* § 1232(c)(3)(A). In some instances,

9   a home study is required. *Id*. § 1232(c)(3)(B).

10          **C.    Flores Agreement requirements.**

11          In 1996, the federal government entered into a settlement agreement referred to as

12   the "Flores Agreement." *See, e.g.*, *Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2,

13   2015) (ECF No. 101). The Flores Agreement "sets out nationwide policy for the detention,

14   release, and treatment of minors in the custody of the [immigration authorities]." *Flores v.*

15   *Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing Flores Agreement ¶ 9). Under a binding

16   interpretation of the Ninth Circuit, the Flores Agreement "unambiguously" applies both to

17   unaccompanied minors and to minors who are encountered together with their parents or

18   legal guardians. *Id.* at 901. Under the Flores Agreement, the government must

19   expeditiously transfer any minor who cannot be released from custody to a non-secure,

20   licensed facility. *Id*. at 902-03 (quoting Flores Agreement ¶ 12). The government must

21   also "make and record the prompt and continuous efforts on its part toward . . . release of

22   the minor." *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) (quoting Flores Agreement

23   ¶ 14).

24          Notably, the Flores Agreement applies only to minors. *Flores*, 828 F.3d at 901. It

25   "does not address . . . the housing of family units and the scope of parental rights for adults

26   apprehended with their children[,]" and it "does not contemplate releasing a child to a

27   parent who remains in custody, because that would not be a 'release.'" *Flores*, 828 F.3d

28   at 906; *see also United States v. Dominguez-Portillo*, No. 17-MJ-4409, 2018 WL 315759,

1    at *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that parents are entitled to care

2    for their children if they were simultaneously arrested by immigration authorities[.]").  Nor

3    does the Flores Agreement provide any rights to adult detainees, including any rights of

4    release.  *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-

5    15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007).

6    Although the Flores Agreement gives preference to release of minors to a parent, this

7    preference "does not mean that the government must also make a parent available; it simply

8    means that, if available, a parent is the first choice."  *Flores*, 828 F.3d at 908.

9           **D.     Executive Branch directives regarding immigration enforcement.**

10          During the prior Administration, the Executive Branch issued several directives

11   regarding enforcement of federal immigration laws.  Executive Order 13767 § 1, 82 Fed.

12   Reg. 8793 (Jan. 30, 2017) ("EO 13767").  First, in January 2017, the former President

13   issued EO 13767 stating that "[i]t is the policy of the executive branch to . . . detain

14   individuals apprehended on suspicion of violating Federal or State law, including Federal

15   immigration law, pending further proceedings regarding those violations[.]"  *Id*. § 2(b).

16   Executive Order 13767 directed DHS to "ensure the detention of aliens apprehended for

17   violations of immigration law pending the outcome of their removal proceedings or their

18   removal from the country to the extent permitted by law," *id*. § 6, and to exercise its parole

19   authority "only on a case-by-case basis in accordance with the plain language of the statute

20   . . . and in all circumstances only when an individual demonstrates urgent humanitarian

21   reasons or a significant public benefit derived from such parole."  *Id*. § 11(d).

22          Second, on April 11, 2017, DOJ issued guidance to all federal prosecutors directing

23   that federal law enforcement prioritize the prosecution of several immigration offenses,

24   including illegal entry under 8 U.S.C. § 1325 and illegal reentry of individuals who had

25   been removed previously.  *See* U.S. DOJ Memorandum on Renewed Commitment to

26   Criminal   Immigration   Enforcement   (April   11,   2017),   available   at

27   https://www.justice.gov/opa/press-release/file/956841/download.

28          Third, on April 6, 2018, the former Attorney General issued a "Memorandum for

Federal Prosecutors along the Southwest Border."  U.S. DOJ News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (the "Zero-Tolerance Memorandum").  The memorandum directed federal prosecutors along the United States–Mexico border "to the extent practicable, and in consultation with DHS, to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)."  *Id.*  Consistent with EO 13767 and the April 2018 Zero-Tolerance Memorandum, DHS began to refer for prosecution increased numbers of adults – including those traveling with children – who unlawfully entered the United States along the Southwest border in violation of Section 1325.  *See generally* EO 13767. Minor children of those adults were transferred to ORR custody as required by the TVPRA.

### E.    Plaintiffs' illegal entry, separation, and reunion.

On or about May 1, 2018, E.C.B. entered the United States with his minor child J.R. near Yuma, Arizona.  Complaint, ¶ 3.  Plaintiffs allege that they left Guatemala because "there were people in Guatemala who did not like [E.C.B.]."  *Id.* ¶ 75.  After arriving in Arizona, U.S. Customs and Border Protection ("CBP") agents took Plaintiffs into custody and transported them to a detention center.  *Id.* ¶ 70.  Plaintiffs allege that approximately three days after being taken into custody, immigration officers informed E.C.B. that J.R. was going to be taken to another facility.  *Id.* ¶ 78.  J.R. was taken to and remained at a shelter in Miami, Florida for approximately five months before being returned to her family in Guatemala on or about September 25, 2018. *Id.* ¶¶ 83, 88, 91.  E.C.B. was meanwhile transferred to a detention center in Florence, Arizona on or around May 13, 2018.  *Id.* ¶ 82. During that time, he had weekly calls with his daughter.  *Id.* ¶ 84.  On or about May 21, 2018, E.C.B. was deported[2] to Guatemala.  *Id.* ¶ 87.

### F.    Plaintiffs' complaint.

Plaintiffs bring this action against the United States under the FTCA, 28 U.S.C. §§

---

[2] E.C.B. was not referred for prosecution.

1346(b)(1), 2671-2680, seeking damages for intentional infliction of emotional distress (Count 1), negligence (Count 2), and loss of child's consortium (Count 3). Compl. ¶¶ 103-129. Plaintiffs allege that these harms stemmed from (1) the prosecution of E.C.B. under the Zero-Tolerance Policy, which resulted in the separation of E.C.B. and J.R., and (2) the conditions of confinement and treatment of Plaintiffs after they were separated.

As to claims based on their treatment while in custody, Plaintiffs allege that they were "grossly mistreated and denied basic medical care." *Id.* ¶ 95. Specifically, they allege they were held in a cold cell with no beds and insufficient blankets, provided insufficient food and no water, and that J.R. received delayed medical treatment after developing a fever. *Id.* ¶¶ 72-74. They also allege that when J.R. was in the Florida detention center, she was not provided clothes to change into after showering and for a time was not allowed to play outside because she did not have tennis shoes. *Id.* ¶¶ 88-89. In addition, they allege that because J.R. suffered "severe depression" and cried inconsolably, a case manager contacted J.R.'s mother and asked if she would agree to put J.R. up for adoption. *Id.* ¶ 91. Plaintiffs filed their Complaint on May 27, 2022, asserting claims under the FTCA: Count I, for intentional infliction of emotional distress; Count II, for negligence, and Count III, for loss of child's consortium. *Id.* ¶¶ 103-129.

### G. Subsequent policy changes.

On February 2, 2021, President Biden issued an Executive Order that condemned the "human tragedy" of the prior Administration's Zero-Tolerance Policy, and that committed the United States government to "protect family unity and ensure that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law." Family Reunification Task Force EO § 1. That Order created a Task Force to identify and reunify families separated under the Zero-Tolerance Policy, and to make recommendations for the potential provision of immigration benefits and mental-health services to those separated families. *Id.* § 4; *see also* Progress Reports of the, Interagency Task Force on the Reunification of Families available at:

https://www.dhs.gov/publication/family-reunification-task-force-progress-reports.

**III.   LEGAL STANDARD.**

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty*., 343 F.3d 1036, 1039-40 (9th Cir. 2003).  Courts must consider the threshold issue of jurisdiction before addressing the merits of a case.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  Plaintiffs bear the burden of establishing jurisdiction because, by filing a complaint in federal court, they seek to invoke it.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  The Court may dismiss an action under Rule 12(b)(1) if the complaint does not allege facts sufficient to establish subject matter jurisdiction on its face or, even if the complaint asserts grounds for jurisdiction on its face, the evidence does not support a finding of jurisdiction.  *Thornhill Publishing Co. v. Gen. Tel. & Elec. Corp.,* 594 F.2d 730, 733 (9th Cir. 1979).  A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at 1039.  A factual challenge allows the court to look beyond the complaint without "presum[ing] the truthfulness of the plaintiff's allegations."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  The Court also can hear evidence outside the pleadings and resolve factual disputes, if necessary, without treating the motion as one for summary judgment.  *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1997).  "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence," and the plaintiff's allegations carry no presumption of truthfulness.  *Robinson*, 586 F.3d at 685.  Whether a facial or factual attack, because "[f]ederal courts . . . have only that power that is authorized by Article III of the Constitution and the statutes enacted by Congress," *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (citation omitted), the Court presumes the action lies outside its limited jurisdiction, and the burden

is on the party asserting jurisdiction to establish that it exists. *Kokkonen*, 511 U.S. at 377.

A district court cannot hear a suit against the United States unless the government has waived sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional in nature," meaning that a party's failure to establish a waiver of sovereign immunity is properly resolved on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Robinson*, 586 F.3d at 685; *Sierra Club v. Whitman*, 268 F.3d 898, 905-906 (9th Cir. 2001).

## IV.    PLAINTIFFS' CLAIMS ARE JURISDICTIONALLY BARRED.

For the reasons set forth below, Plaintiffs' claims should be dismissed for lack of jurisdiction. The government does not defend the policy choices at issue in this case, which have now been repudiated. Indeed, President Biden has condemned the "human tragedy" that resulted from the Zero-Tolerance Policy and committed not to repeat that tragedy. Family Reunification Task Force EO § 1. But this case does not concern the wisdom of those now-revoked policies. Instead, it is a personal injury suit for damages under the FTCA. Plaintiffs cannot prevail on their FTCA claims because this Court lacks subject-matter jurisdiction under established legal principles.

### A.    The claims are barred by the discretionary function exception.

#### 1.    Legal standard for discretionary function exception.

The United States, as a sovereign entity, is immune from suit except insofar as it has specifically and expressly consented to be sued. *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). "[T]he terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman*, 453 U.S. at 160 (internal quotes and citations omitted). Absent a specific, express waiver, sovereign immunity bars a suit against the government for lack of subject matter jurisdiction. *See FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).

The FTCA is "a limited waiver of sovereign immunity." *Gonzalez v. United States*, 814 F.3d 1022, 1026 (9th Cir. 2016). The statute allows individuals to sue the United States when a federal employee's conduct, within the scope of his or her employment,

causes "injury, loss of property, or personal injury or death."  28 U.S.C. § 1346(b)(1).

However, the FTCA's waiver of sovereign immunity is subject to exceptions.  *See* 28

U.S.C. § 2680.

When an exception applies, the United States retains its sovereign immunity, the

court lacks jurisdiction, and the claim must be dismissed.  *See Nurse v. United States*, 226

F.3d 996, 1000 (9th Cir. 2000).   One such exception – the "discretionary function

exception" ("DFE") – bars "[a]ny claim" that is "based upon the exercise or performance

or the failure to exercise or perform a discretionary function or duty on the part of a federal

agency or an employee of the Government, whether or not the discretion involved be

abused." 28 U.S.C. § 2680(a); *see also Gaubert v. United States*, 499 U.S. 315, 325 (1991);

*Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

The Supreme Court has set forth a two-part test to determine if the DFE applies.

*United States v. Gaubert*, 499 U.S. at 328-32.  Courts must first ask whether the challenged

conduct was in fact "discretionary in nature" – that is, whether the conduct involved "'an

element of judgment or choice.'"  *Id.* at 322 (quoting *Berkovitz*, 486 U.S. at 536); *see also*

*Chadd v. United States*, 794 F.3d 1104, 1109 (9th Cir. 2015).  The first prong is met unless

"'a federal statute, regulation, or policy specifically prescribes a course of action for an

employee to follow.'"  *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996) (quoting

*Berkovitz*, 486 U.S. at 536); *see also Kelly v. United States*, 241 F.3d 755, 761 (9th Cir.

2001) ("[A] general regulation or policy . . . does not remove discretion unless it

specifically prescribes a course of conduct."); *Reed ex rel. Allen v. U.S. Dep't of Interior*,

231 F.3d 501, 504 (9th Cir. 2000) (since "[n]o federal statute, regulation, or policy

require[d] a particular course of action," the agency's actions "could be no other way than

by the exercise of discretion").  Even if a regulation contains a mandate to do something,

if that mandate involves judgment or choice, the discretion element is satisfied.  *See*

*GATX/Airlog Co. v. United States,* 286 F.3d 1168, 1174-75 (9th Cir. 2002).  Further, where

the policies that inform the conduct at issue allow the exercise of discretion, the defendant's

acts or failures to act are presumed to be discretionary.  *Lam v. United States*, 979 F.3d

665, 674 (9th Cir. 2020).   Finally, the applicable policies and authorities must be considered in context – "the presence of a few, isolated provisions cast in mandatory language does not transform an otherwise suggestive set of guidelines into binding agency regulations." *Id*. at 677 (citing *Gonzalez*, 814 F.3d at 1030).

Second, if the conduct involves choice or discretion, courts must next determine whether the judgment of the government employee was "of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23.   Recognizing that tort actions challenging the government's discretionary policy judgments could "seriously handicap efficient government operations," Congress designed the DFE to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy" through a tort action. *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).   The focus of this inquiry is whether the "nature of the actions taken," pursuant to an exercise of discretion, "are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325; *see also Nurse*, 226 F.3d at 1001 (explaining that the decision "'need not actually be grounded in policy considerations' so long as it is, 'by its nature, susceptible to a policy analysis.'") (quoting *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998)).

The government need not "prove that it considered these factors and made a conscious decision on the basis of them." *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1028 (9th Cir. 1989).   Indeed, under the second prong, the government actors' subjective motive is immaterial: "the focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation" but rather "on the nature of the actions taken and on whether they are *susceptible* to policy analysis." *Gonzalez,* 814 F.3d at 1027-28 (quoting *Gaubert,* 499 U.S. at 325) (emphasis added). Where the relevant policies provide for discretion, it must be presumed that the government's actions are grounded in policy when exercising that discretion. *Lam*, 979 F.3d at 681 (citing *Gaubert*, 499 U.S. at 324; *Chadd*, 794 F.3d at 1104).   And the statutory text confirms that the exception applies "whether or not the discretion involved [was] abused" by United States officials. 28 U.S.C. § 2680(a); *see also Reynolds v. United States*,

549 F.3d 1108, 1112 (7th Cir. 2008) (DFE applies where there are allegations of "malicious and bad faith conduct" because "subjective intent is irrelevant to our analysis").

If both prongs of the *Gaubert/Berkowitz* test are met, the DFE applies, the United States retains its sovereign immunity, the court lacks jurisdiction, and the claim must be dismissed. *See Nurse*, 226 F.3d at 1000. This result applies even where the government may have been negligent in the performance of such discretionary acts, as "negligence is irrelevant to the discretionary function inquiry." *Routh v. United States*, 941 F.2d 853, 855 (9th Cir. 1991). As the legislative history of the FTCA explains, the statute's limited waiver of sovereign immunity was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

### 2. The decision to detain E.C.B. in secure adult detention facilities pending removal are discretionary in nature.

Here, the challenged conduct giving rise to Plaintiffs' claims appears to be the decision to detain him in a secure adult detention facility pending removal, which resulted in his separation from J.R. Plaintiffs' claims based on this decision are barred by the DFE. This type of conduct involves precisely the sort of discretionary decision-making that is susceptible to policy analysis. Indeed, not only has E.C.B. failed to identify any applicable federal statute, regulation, or policy that he contends was violated here despite his burden to do so, but it is well-settled that decisions regarding whether to prosecute and regarding detention and location of confinement are discretionary in nature.

As the Supreme Court has recognized, "[t]he Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Thus, as the Ninth Circuit has recognized, "[t]he decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability" under the FTCA. *General Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998).

The government's decision on whether to refer E.C.B. for prosecution "amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, No 18-1445 (PLF), 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019); *see also Peña Arita*, 470 F. Supp. 3d at 686-87. The discretionary function exception bars the Court from "second-guessing" or inquiring into government actors' intent in exercising that prosecutorial discretion. *Berkovitz*, 486 U.S. at 536; *see also Lam*, 979 F.3d at 673 (citing *Varig*, 467 U.S. at 814). In determining the applicability of the DFE, the Court looks only at whether the conduct or decision at issue is "'susceptible' to policy analysis" from an objective perspective – subjective intent is not part of the inquiry. *Gonzalez*, 814 F.3d at 1032.

The government's decisions concerning where to detain E.C.B. pending removal were also discretionary and susceptible to policy analysis. Concerns about "subjecting the prosecutor's motives and decision making to outside inquiry" are magnified in the immigration context. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999). There, the federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1).[3] "Congress has placed the responsibility of determining where aliens are detained within the discretion of the [Secretary]." *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added); *see also Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another."); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that the "Attorney General's discretionary power to transfer

---

[3] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" now mean the Secretary of Homeland Security. *See Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

1   aliens from one locale to another, as she deems appropriate, arises from" statute).

2          As the Ninth Circuit has explained, "[b]ecause the decision to detain an alien

3   pending resolution of immigration proceedings is explicitly committed to the discretion of

4   the Attorney General and implicates issues of foreign policy, it falls within this [FTCA]

5   exception." *Mirmehdi v. United States*, 662 F.3d 1073, 1081-82 (9th Cir. 2011); *see also*

6   *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions where to place

7   prisoners are policy-based decisions protected by DFE); *Bailor v. Salvation Army*, 51 F.3d

8   678, 685 (7th Cir. 1995) (decisions whether to detain or release are policy-based decisions

9   protected by DFE); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement

10  decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39,

11  44 (1st Cir. 2003) ("assignment to particular institutions or units . . . must be viewed as

12  falling within the discretionary function exception to the FTCA").

13         This discretion necessarily entails decisions regarding with whom noncitizens are

14  detained, including decisions regarding whether adults and minors can be detained in the

15  same facility and whether to detain family members together.  *See Peña Arita v. United*

16  *States*, 470 F. Supp. 3d 663, 691-92 (S.D. Tex. 2020) (decisions by DHS to separate family

17  members are protected by the DFE).  Although the Flores Agreement contains some

18  requirements concerning the detention of minors, it does not specifically prescribe a course

19  of action and thus does not remove the government's discretion.  Moreover, the Flores

20  Agreement does not require release of a parent or mandate that parents be housed with their

21  children.  *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-

22  15; *Bunikyte*, 2007 WL 1074070, at *16; *see supra* at 5-6.

23         In this case, Plaintiffs allege the separation of Plaintiffs from each other violated

24  their "substantive due process right to family integrity."  Complaint, ¶ 96.  But Plaintiffs

25  do not cite any statutes, regulations, policies, or constitutional provisions that prescribe a

26  specific course of action that the government was required to take in connection with the

27  prosecution and detention of E.C.B.  Instead, the challenged decisions were the result of

28  the exercise of discretion.  Accordingly, the exercise of the statutory authority regarding

1    whether and where to detain him pending his removal is protected by the discretionary
2    function exception.

3         For similar reasons, the decision to determine that J.R. was "unaccompanied" within
4    the meaning of the TVPRA is a decision covered by the DFE.  *See* 6 U.S.C. § 279(g)(2).
5    Whether a parent is "available to provide care and physical custody" is a policy question
6    vested in federal officials.  *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va.
7    2015) ("Federal agencies are afforded discretion under the statutory scheme when
8    classifying juveniles as unaccompanied alien children."), *aff'd in part and vacated in part*,
9    826 F.3d 721 (4th Cir. 2016); *see also Baie v. Secretary of Def.*, 984 F.2d 1375, 1377 (9th
10   1986) ("[I]nterpretation of the statute is a plainly discretionary administrative act the
11   'nature and quality' of which Congress intended to shield from liability under the FTCA.");
12   *Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001) (determining whether conduct
13   constituted "crime of moral turpitude" under applicable statute was "a quintessential
14   exercise of [agency's] broad discretion").  And here, the fact that E.C.B. was detained and
15   removed supports the officials' determination that J.R. should have been deemed
16   unaccompanied and thus transferred to the custody of ORR.  *See Fisher Bros. Sales, Inc.
17   v. United States*, 46 F.3d 279, 287 (3d Cir. 1995) (holding that a decision was protected by
18   the DFE when it "necessarily reflects the decisionmaker's judgment that it is more
19   desirable to make a decision based on the currently available information than to wait for
20   more complete data or more confirmation of the existing data."). And the DFE would
21   preclude Plaintiffs' challenge to that determination even if a court later determined that
22   "the discretion involved [was] abused."  28 U.S.C. § 2680(a).

23        In the end, Plaintiffs do not allege injury from any government action or decision
24   that was not subject to discretion and susceptible to policy analysis.  To the extent Plaintiffs
25   suggest that the government was required to release them into the interior, did not have the
26   discretion to prosecute E.C.B. for criminal violations of immigration law, or did not have
27   discretionary authority to determine that J.R. was unaccompanied, these decisions are
28   quintessential discretionary policy judgments subject to the DFE.  Accordingly, even if

some or all of those decisions entailed an abuse of discretion, they are not subject to challenge under the FTCA.

### 3. Plaintiffs' claims concerning their conditions of confinement are barred by the discretionary function exception.

Plaintiffs also bring claims based on the treatment of E.C.B. and J.R. while in custody. Complaint, ¶¶ 71-75, 79-81, 88-91. Among other things, Plaintiffs allege that immigration officials held them in a cold place they call an "icebox," *id.* ¶ 73, and that E.C.B. was denied the ability to take showers or brush his teeth, was given uncooked food and was denied medical treatment, *id.*, ¶ 79. Plaintiffs further allege that government officials detained J.R. in Miami, Florida, did not make clothes available to her after she showered, and did not allow her to play outside because she did not have tennis shoes. *Id.* ¶ 88-89.

Courts have repeatedly held that claims based on acts or omissions relating to "conditions of confinement" are barred by the DFE because the manner in which the government manages and operates its detention facilities involves discretionary decisions susceptible to policy considerations. *See, e.g.*, *Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer database that failed to reveal immigration status protected by discretionary function exception); *Cosby v. Marshals Service*, 520 F. App'x 819, 821 (11th Cir. 2013) (detainee decisions involve "several policy considerations . . . including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option"); *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (DFE shielded decision to transfer prisoner); *Antonelli v. Crow*, No. 08-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, barred by DFE); *Lineberry v. United States*, No. 3:08-cv-0597, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary

function exception").  Accordingly, while the government is committed to the safe and humane treatment of every individual in detention, Plaintiffs' claims are barred by the DFE.

### 4. Plaintiffs' assertion of unconstitutional conduct does not preclude application of the discretionary function exception.

Plaintiffs claim that their separation from each other violated the Constitution. Complaint, ¶ 96.  This allegation does not alter the discretionary function analysis. Congress did not create the FTCA to address constitutional violations, but rather to address violations of state tort law committed by federal employees.  *See FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (recognizing that "§ 1346(b) does not provide a cause of action for" a "constitutional tort claim").  As noted, the Supreme Court has explained that when a "federal statute, regulation, or policy *specifically prescribes* a course of action for an employee to follow," there is no further discretion to exercise.  *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536) (emphasis added).  The Constitution is no different: in some cases, the Constitution may establish such a specific prescription that it removes an official's discretion, but the requirement of specificity applies with the same force whether the prescription is found in the Constitution or a statute.

The Supreme Court has long recognized that conduct may be deemed discretionary even if it is later determined to have violated the Constitution.  The common law doctrine of official immunity thus applies to the exercise of "discretionary functions" even when the conduct violated the Constitution, so long as the constitutional right was not defined with sufficient specificity that the official should have known the act was prohibited.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions[] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *see also*, *e.g.*, *Wilson v. Layne*, 526 U.S. 603, 614-615 (1999) (applying the "discretionary function[]" formulation and holding that officers were entitled to qualified immunity because, although their conduct violated the Fourth Amendment, the law was not clearly established at the time).

- 18 -

1    Thus, when the Supreme Court in *Berkovitz* held that a federal mandate must
2  "specifically prescribe[]" conduct in order to overcome the discretionary function
3  exception, it referred to official immunity precedent, underscoring that the two standards
4  operate in tandem.  486 U.S. at 536 (citing *Westfall v. Erwin*, 484 U.S. 292, 296-297
5  (1988)).  Accordingly, the discretionary function exception is not made inapplicable by
6  every allegation of unlawful or unconstitutional conduct, but only by a showing that the
7  government official's discretion was cabined by a specific, clearly established directive,
8  accompanied by plausible assertions that the specific directive was violated.  *See, e.g.*,
9  *Bryan v. United States*, 913 F.3d 356, 364 (3d Cir. 2019) ("Because . . . the CBP officers
10  did not violate clearly established constitutional rights, the FTCA claims also fail" under
11  the discretionary function exception.).

12    Indeed, even before it specifically addressed the qualified immunity standards
13  applicable to federal employees, the Supreme Court in *Butz v. Economou*, 438 U.S. 478
14  (1978), explicitly recognized that the discretionary function exception would apply even if
15  alleged conduct might later be held unconstitutional.  The Court in that case held that
16  officials sued for violations of constitutional rights were entitled to qualified, but not
17  absolute immunity.  The Court explained that were it otherwise, the recently recognized
18  *Bivens* remedy would be illusory, and, as relevant here, it noted that "no compensation
19  would be available from the Government, for the Tort Claims Act prohibits recovery for
20  injuries stemming from discretionary acts, even when that discretion has been abused." *Id.*
21  at 505.  *Butz* and subsequent decisions thus leave no doubt that conduct that violates the
22  Constitution may constitute the type of abuse of discretion that falls within the scope of the
23  discretionary function exception.

24    The Ninth Circuit has declined to decide "the level of specificity with which a
25  constitutional proscription must be articulated in order to remove the discretion of a federal
26  actor."  *Nurse*, 226 F.3d at 1002 n.2; *see also Fazaga v. Fed. Bureau of Investigation*, 916
27  F.3d 1202, 1251 (9th Cir. 2019) ("[I]f the district court instead determines that Defendants
28  did violate a nondiscretionary federal constitutional . . . directive, the FTCA claims may

1    be able to proceed to that degree.").  For the reasons discussed, a court should require the

2    same level of specificity that would be required in determining whether a statute left an

3    employee with "no discretion to abuse."

4        In any event, whatever the precise standard, it is not satisfied here.  Regardless of

5    whether some or all of the alleged acts reflected an abuse of discretion, Plaintiffs have

6    identified nothing in the decisions of the Supreme Court or the Ninth Circuit at the time of

7    the alleged events that removed any official's discretion with respect to any of the

8    categories of asserted actions by "specifically prescribe[ing] a course of action for an

9    employee to follow."  *Gaubert*, 499 U.S. at 322.  Indeed, as the Fourth Circuit observed,

10   "we . . . have been unable to find a substantive due process right to family unity in the

11   context of immigration detention pending removal." *Reyna as next friend of J.F.G. v. Hott*,

12   921 F.3d 204, 210-11 (4th Cir. 2019).  And while some decisions, including decisions in

13   this District, have concluded that constitutional allegations made the exception

14   inapplicable, none has analyzed the relevant standards set out in the Supreme Court's

15   FTCA decisions and in its decisions involving official immunity.[4]  Those principles make

16   clear that the discretionary function exception bars Plaintiffs' claims.

17       **B.    Plaintiffs' claims relating to the decision to transfer J.R. to the custody
18            of ORR are barred by the FTCA's exception for actions taken while
             reasonably executing a statute.**

19       Plaintiffs' claims relating to the decision to transfer J.R. to the custody of ORR

20   (Complaint, ¶¶ 88 *et. seq.*) are independently precluded because the FTCA prevents the

21   United States from being held liable for "[a]ny claim based upon an act or omission of an

22   employee of the Government, exercising due care, in the execution of a statute or

23   regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a).  Thus,

24   "[w]here government employees act pursuant to and in furtherance of regulations, resulting

25   harm is not compensable under the act[.]"  *Dupree v. United States*, 247 F.2d 819, 824 (3d

26

27   ───────────────
     [4] *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020); *Nunez Euceda v. United
28   States*, No. 2:20-cv-10793, 2021 WL 4895748, *3 (C.D. Cal. Apr. 27, 2021); *C.M. v.
     United States*, No. CV-19-5217, 2020 WL 1698191, *4 (D. Ariz. Mar. 30, 2020).

1   Cir. 1957); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim

2   based on "enforcement of 'rules and regulations'" barred by § 2680(a)).

3       This exception "bars tests by tort action of the legality of statutes and regulations."

4   *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Rep. No. 77-2245, 77th

5   Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality

6   of legislation, or the legality of a rule or regulation should be tested through the medium

7   of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956)

8   (FTCA does not waive sovereign immunity for claims based on employees' acts

9   "performed under and in furtherance of the regulation . . . even though the regulation may

10  be irregular or ineffective").  Thus, where a government employee's actions are authorized

11  by statute or regulation – even if that statute or regulation is later found unconstitutional or

12  invalid – the claim must be dismissed for lack of subject matter jurisdiction.  *See Borquez*

13  *v. United States*, 773 F.2d 1050, 1052-53 (9th Cir. 1985); *FDIC v. Citizens Bank & Trust*

14  *Co. of Park Ridge, Ill.*, 592 F.2d 364, 366 (7th Cir. 1979); *Sickman v. United States*, 184

15  F.2d 616, 619 (7th Cir. 1950).

16      The United States is required to "transfer the custody" of children to the care of

17  ORR "not later than 72 hours after" determining that there is no parent available to provide

18  care and physical custody absent exceptional circumstances.  8 U.S.C. § 1232(b)(3).  In

19  this case, the government made the determination that E.C.B. was unable to provide care

20  and physical custody for J.R. because it had previously made the discretionary decisions to

21  refer him for prosecution and removal.  Once each of those protected discretionary

22  determinations had been made, the TVPRA – which Plaintiffs do not challenge – required

23  that J.R. be transferred to ORR custody.  The enforcement of that statutory command

24  cannot form the basis of an FTCA claim.[5]

25  ――――――――――――――――

26  [5] In reaching the contrary conclusion, district courts have stated that there is no statute or
    regulation "requiring the separation of Plaintiffs upon their entry into the country."  *A.P.F.*,

27  492 F. Supp. 3d at 996; *see Nunez Euceda*, 2021 WL 4895748, *4 (similar).  But, as just
    described, federal law does require that children be placed into ORR custody if their parents

28

**C.      Plaintiffs' claims are barred because there is no private person analogue.**

Plaintiffs' claims also fail because the government acts that Plaintiffs challenge have no private-person analogue.   The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."   28 U.S.C. § 1346(b)(1).   The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.   The FTCA does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotes omitted).   The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing liability under the FTCA." *United States v. Olson*, 546 U.S. 43, 45-46 (2005).   Though the private analogue need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government actor sued would be subject to liability under state law if it were a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

Because only the federal government has the authority to enforce federal criminal and immigration laws and make detention determinations, there is no private-person analogue that would support a claim under the FTCA.   The alleged harms here stem from the federal government's decision to detain  E.C.B. and hold him in custody separate from his child pending immigration proceedings or prosecution, resulting in J.R.'s placement in the care and custody of ORR.   The United States has not waived its sovereign immunity for such decisions, as they have no private-person counterpart.  *See, e.g.*, *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status

---

are unable to provide care and physical custody.  For the reasons described above, the decision to detain those parents for prosecution, and to detain them pending removal, is a quintessentially discretionary one.

1    adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*,

2    No. 13-00967, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing that

3    "immigration matters" are "an inherently governmental function"); *Bhuiyan v. United*

4    *States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private

5    analogue to governmental withdrawal of immigration benefits.").

6          The court in *C.M.* and *A.P.F.* found a private-person analogue to nursing home

7    employees, relying on *Estate of Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2020 WL

8    1158552 at *2 (D. Ariz. Mar 10, 2020), a case involving the Bureau of Prisons' duty toward

9    inmates in its care.  *See C.M.*, 2020 WL 1698191, at *3; *A.P.F.*, 492 F. Supp. 3d at 995.

10   The *Shartle* court found an analogy to a nursing home's duty of care in Ariz. Rev. Stat. §

11   46-455, which imposes civil liability on nursing home employees who cause or permit the

12   life of a vulnerable adult to be endangered by neglect.  Defendant respectfully submits that

13   a nursing home's duty to safeguard against neglect is wholly different from the federal

14   government's enforcement of federal criminal and immigration laws and does not provide

15   the "persuasive analogy" required for jurisdiction under the FTCA.

16          **D.    Plaintiffs' claims are impermissible direct liability or systemic tort**
17          **claims.**

18         The FTCA's limited waiver of sovereign immunity allows a plaintiff to sue the

19   United States for damages arising from certain torts committed by federal employees acting

20   within the scope of their employment.  *Valdez v. United States*, 56 F.3d 1177, 1179 (9th

21   Cir. 1995) (citing 28 U.S.C. § 1346(b)).  As the Ninth Circuit has held, the terms "person"

22   and "employee of the government," as used in the FTCA, mean individuals and natural

23   persons, not institutions or corporate entities.  *Adams v. United States*, 420 F.3d 1049,

24   1052-55 (9th Cir. 2005).  Hence, a plaintiff cannot assert "systemic" claims or seek to hold

25   the United States directly liable under the FTCA but must instead allege tortious conduct

26   by individual federal employees, acting within the scope of their employment, for whom

27   the United States has assumed liability under the FTCA.  *See, e.g.*, *Lee v. United States*,

28   No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258, at *6 (D. Ariz. Sept. 18, 2020)

(applying *Adams* and dismissing claims of "generalized negligence" asserted against staff and employees of federal institutions "as a whole" for lack of jurisdiction).

Here, as in *Lee*, Plaintiffs seek to raise direct liability and institutional tort claims against the United States.  In their FAC, Plaintiffs attribute the alleged tortious conduct to the government as a whole, often referring to "the government" rather than specific tortious conduct on the part of specific federal employees for whom the United States must assume liability.  *See, e.g.*, Complaint, ¶¶ 1, 3, 58, 63, 70, 96, 98, 102.  The FTCA's limited waiver of sovereign immunity does not encompass such "systemic," institutional tort claims or "generalized theories" of tortious conduct "asserted against the staff and employees of federal institutions as a whole." *Lee*, 2020 WL 6573258, at *6.

## V.    CONCLUSION.

For the foregoing reasons, Defendant requests that this action be dismissed for lack of subject matter jurisdiction.

RESPECTFULLY SUBMITTED this 1st day of August, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

s/*Kristina L. Morrison*
KRISTINA L. MORRISON
Assistant United States Attorney
*Attorneys for Defendant*

- 24 -

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 1, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

> **Jennifer Soo Jung Lee−Cota**
> **Randall Papetti**
> Papetti Samuels Weiss McKirgan LLP
> 15169 N Scottsdale Rd., Ste. 205
> Scottsdale, AZ 85254
> Tel: 480−800−3528
> jleecota@PSWfirm.com
> rpapetti@PSWfirm.com
>
> **Karen G Johnson−McKewan**
> **Russell Paul Cohen**
> **Ryann R McMurry**
> Orrick Herrington & Sutcliffe LLP – San Francisco, CA
> Orrick Bldg.
> 405 Howard St., 4th Fl.
> San Francisco, CA 94105−2669
> Tel: 415−773−5700
> Fax: 415−773−5759
> rcohen@orrick.com
>
> **Megan B Benton**
> Orrick Herrington & Sutcliffe LLP − Sacramento, CA
> 400 Capitol Mall, Ste. 3000
> Sacramento, CA 95814−4497
> Tel: 961−329−7966
> mbenton@orrick.com
>
> *Attorneys for Plaintiff*

s/ Lauren M. Routen
U.S. Attorney's Office