

Ricardo de Anda, Esq. (pro hac vice *pending*)
**DE ANDA LAW FIRM**
Plaza de San Agustin
212 Flores Ave.
Loredo, TX 78040
(956) 726-0038
(956) 726-0030
deandalaw@gmail.com
*Attorneys for Plaintiff*

Lincoln Combs, Esq. – State Bar #025080
Sophia J. Augeri, Esq. – State Bar #031001
**O'STEEN & HARRISON, PLC**
300 W. Clarendon Ave., Suite 400
Phoenix, Arizona 85013-3424
(602) 252-8888
(602) 274-1209 FAX
lcombs@vanosteen.com
saugeri@vanosteen.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE STATE OF ARIZONA

| | |
|---|---|
| E.C.B., on behalf of himself and his minor child, J.R. | Case No. 2:22-cv-00915-CDB |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |
| vs. | |
| United States of America, | |
| Defendant. | |

## INTRODUCTION

Plaintiffs, ECB (hereinafter "Elias") and his daughter, JR (hereinafter "Jocelin"), natives

of Guatemala, brought suit under the Federal Tort Claims Act ("FTCA") against the United States

O'STEEN & HARRISON
ATTORNEYS AT LAW

for damages occasioned by the human consequences of the government's unconstitutional family separation policy. They fled Guatemala seeking asylum in the U.S. as a result of death threats received by Elias in his home country. In filing suit, plaintiffs' cause of action joins a string of similar cases brought before this Court, in which the government has unsuccessfully filed virtually identical motions making the exact same legal arguments as made in the instant case. The government's motions have been unanimously rejected in this District. *C.M. v. United States*, No. LV-19-05217, PHX-SRB, 2020 U.S. Dist. LEXIS 252691, at *11 (D. Ariz. March 30, 2020); *A.P.F. v. United States*, 492 F. Supp. 3d 989, 994 (D. Ariz. 2020); *A.I.I.L. v. Sessions*, No. CV-19-00481-TUC-JHC, 2022 U.S. Dist. LEXIS 61582, at *29 (D. Ariz. March 31, 2022); *F.R. v. United States,* No. CV-21-0038-PHX-DLR 2022 U.S. Dist. LEXIS 130605, at *16 (D. Ariz. July 22, 2022). Given this history, the Court should similarly reject the government's attempt to deny plaintiffs the relief accorded to them by law.

## BACKGROUND

In weighing a motion for summary judgment, the Court should accept as facts the allegations in the complaint, along with all reasonable inferences. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Plaintiffs were enticed to enter the United States in the vicinity of Yuma, Arizona, by Border Patrol agents who intimated to Elias that they would be granted asylum upon entry. Complaint (Doc. 1) ¶ 71. The agents opened the gates of the border wall to allow Plaintiffs to enter into the U.S. unobstructed and without interference from the agents. *Id.* However, upon crossing the border, Plaintiffs were assaulted by the agents, detained, and transported to a Border Patrol holding facility. *Id.* ¶ 72. This occurred on May 1, 2018, barely four weeks after the April

O'STEEN HARRISON
ATTORNEYS AT LAW

6, 2018, announcement by the Attorney General of the government's family separation policy disguised as a "Zero Tolerance Policy". *Id.* ¶¶ 33-34, 71. The purpose of the policy was to deter the influx of families from Central America seeking asylum along the southern border, by brutally separating families, and deporting parents while waylaying their children in detention facilities in the U.S. for prolonged periods of time. *Id.* ¶¶ 32-49.

Plaintiffs were deceived into entering the United States by Border Patrol agents for the purpose of separating Elias from Jocelin, and thereby further the messaging of cruelty that the family separation policy was meant to convey to asylum seekers. *Id.* ¶¶ 104-09. To that end, Elias was summarily and wrongfully deported on May 21, 2022, while eight-year-old Jocelin was left to languish in detention in the government's hands for five months. *Id.* ¶¶ 87-91.

While the unconstitutional treatment visited on Plaintiffs pursuant to the family separation policy served the government's purpose of deterring irregular immigration by projecting a horrid policy of child cruelty, the consequences on Elias and his young daughter were devastating. The government placed Jocelin in a child detention facility administered by the Office of Refugee Resettlement in Miami, Florida, where its unconstitutional and illegal actions against her continued. *Id.* ¶¶ 2, 7, 88-91. Despite locating and communicating with Jocelin's mother in Guatemala after her arrival at the detention center, Jocelin was kept in detention for five months pending removal proceedings at the behest of agents of the Immigration and Customs Enforcement (ICE), when she could have been immediately sent home. *Id.* ¶¶ 88-91. Indeed, she was purposefully prevented from being reunited and sent home with her father when he was deported and held in confinement for a prolonged period solely to advertise, and ramp up, the

O'STEEN & HARRISON
ATTORNEYS AT LAW

terror among would be asylum seekers in the U.S. occasioned by the family separation policy and driving home its deterrent effects. *Id.* ¶¶ 104-09.

Moreover, while Jocelin was detained in Miami for five months, despite her mother begging the government to release her and send her home, Elias was summarily deported 21 days after his detention, after signing documents that he could not read, but "agreeing" thereby to expedited removal on the false information that this was the only way he would be reunited with Jocelin. *Id.* ¶¶ 86-87. Jocelin's father was summarily deported, intentionally and illegally, to prevent her reunification, and thereby occasion the deterrent effect of the government's family separation policy. *Id.* ¶¶ 104-09.

There was no need to separate Jocelin from her father, or for Elias to be deported without his daughter. He was not charged with illegal entry, or with any other crime before his deportation. Indeed, he entered at the invitation of Border Patrol agents, and was therefore not in the country illegally when apprehended. Moreover, he was not transferred to a jail as a criminal defendant before his deportation, which was the government's pretext for the separation. The government saw fit to physically separate him from his daughter and deprive them from each other for a prolonged period of time despite Elias never having been prosecuted. Instead of reuniting them for the flight home when Elias was deported 21 days after his detention by Border Patrol, Jocelin was intentionally left behind by the government to further the goals of its family separation policy. Indeed, the intentional prevention of young Jocelin's reunification with her family for five months is indicative of the government's willful and cruel use of prolonged family separation as an immigration tool with which to control irregular immigration at the border.

O'STEEN&HARRISON
ATTORNEYS AT LAW

The government failed to provide young Jocelin's family with any hope of reunification throughout the five months of her detention and separation.  There were no timelines; nothing to give Jocelin any hope of eventual reunification.  Indeed, the government suggested to Jocelin's mother that adoption by a family in the U.S. was a possibility.  In essence, there were no bounds to the government's inhuman treatment of Jocelin in holding her as a virtual hostage for five months in service of its unconstitutional policy.

### STANDARD OF REVIEW

The government has filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Specifically, it argues that the FTCA is inapplicable because there is no plausible analogue at state law, and in the alternative, that the government is immune to this suit under the discretionary function and due care exceptions of the FTCA, and because plaintiffs proffer impermissible direct liability claims against the government itself, as opposed to employees of the government.  Where, as here, the Defendant launches a facial attack on jurisdiction, the Court must accept as true all factual allegations in the Complaint and deem all reasonable inferences in Plaintiffs' favor.  *Wolfe*, 392 F3d at 362.

### ARGUMENT

**I.      The Discretionary Function Exception Does Not Apply**.

The discretionary function exception to the FTCA allows the government to evade liability where the actions complained of involve judgment or choice *and* are based on considerations of public policy.  *C.M.*, 2020 U.S. Dist. LEXIS 252691 at *10.  However, the discretionary function exception does not apply where the employee has no choice but to adhere to the directive at issue.

O'STEEN *HARRISON*
ATTORNEYS AT LAW

*F.R.,* 2022 U.S. Dist. LEXIS 130606 at *14.  Such occurs where the actions, and failure to act, amount to a failure to adhere to constitutional mandates. The Constitution, for obvious reasons, can limit the government's discretion under the FTCA, since no law can grant employees and agents of the government the "discretion" to violate the Constitution.  *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) (holding that "the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply"); *see also Fazaga v. Federal Bureau of Investigation*, 916 F.3d 1202, 1250-51 (9th Cir. 2019) (quoting *Nurse*); *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016) ("We hold that the FTCA's discretionary-function exception does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a constitutional prescription.").

Border Patrol agents opened the gates to the border wall to lure Plaintiffs into crossing into the U.S. so that the government could separate Plaintiffs and entrap them in the web of the family separation policy.  The government prevented the reunification of Jocelin with her father before his deportation, and it held young Jocelin in a detention center for a prolonged period of time to further the deterrent goals and effects of the government's policy of family separation. And the government kept Jocelin and her family in the dark as to when or whether she would be released to them, even suggesting that she be adopted by Americans so that she would never see her family again. These things were all done to further the terror of the family separation policy, as designed and intended by government agents to deter migrants from seeking asylum along the southern border.  The strategy was based on a program of terror aimed at the children of Central American families with the temerity to seek refuge in the United States.  The message was clear. If you enter the U.S. with a child, we will take them from you and brutalize them, as the government did with

O'STEEN HARRISON
ATTORNEYS AT LAW

Jocelin.  The policy and its execution were nothing short of government campaign to commit child abuse to elicit shock and dread among would-be asylum seekers.  In the end, it was the children who most suffered the human consequences of the government's family separation policy.  Clearly, these actions allege Constitutional violations of the highest order.  *See Nurse,* 226 F.3d at 1002 n.2; *Ms. L. v. United States Immigration and Customs Enf't.*, 310 F. Supp. 3d 1133, 1144-46 (S.D. Cal. 2018) ("This practice of separating class members from their minor children, and failing to reunify class members with those children, without any showing the parent is unfit or presents a danger to the child is sufficient to find Plaintiffs have a likelihood of success on their due process claim.").

Finally, luring Plaintiffs to enter the U.S. for the purpose of separating and subjecting plaintiffs to a regime of terror, purposefully preventing Plaintiffs' reunification for five months and subjecting Jocelin to prolonged detention to send a message of child horror to potential migrants in Central America and thereby deter migration, is not conduct susceptible to a reasonable policy analysis.  Not only is such conduct not susceptible to a reasonable policy analysis, such conduct has been categorized as "egregious," "outrageous," a "shock [to] the contemporary conscience," and interfering with rights "implied in the concept of ordered liberty," such that the conduct can be defined as "brutal" and so offensive "that it does not comport with traditional ideas of fair play and decency." *Ms. L.*, 310 F. Supp. 3d at 1144-46.  The *Ms. L* Court held that family separation was a violation of due process.

Thus, because the Plaintiffs have plausibly alleged that their initial detention, their subsequent separation, and Jocelin's prolonged detention violated their constitutional rights, the discretionary function exception does not apply. *See F.R.*, 2022 U.S. Dist. LEXIS 130606 at **16-

**O'STEEN & HARRISON**
ATTORNEYS AT LAW

17 (denying government motion to dismiss including discretionary function exception arguments, citing rulings in parallel family separation cases).

## II.   The Due Care Exception Does Not Apply.

Defendants assert that the government is free from liability because it acted with due care in separating Jocelin from her father and transferring her to ORR custody pursuant to 8 U.S.C. § 1232 (b)(3) within 48 hours.  However, their argument misses the point.  The government's pretext for separating young Jocelin from her father was Elias' supposed criminal charge of entry without inspection and subsequent transfer to an adult jail facility. The pretext was false, as shown by the fact that the government did not charge Elias with a crime such that a separation was necessary. Moreover, there was no statute or regulation requiring the separation.   Rather, Jocelin was separated from her father because of a cruel and clearly unconstitutional government policy, a memorandum from the Attorney General designed to terrorize children and their families to effect the deterrence of irregular immigration.  The due care exception does not apply where a mere policy, such as in the instant case, rather than a statute or regulation, mandated the conduct at issue.  *C.M.*, 2020 U.S. Dist. LEXIS 252691 at *9 (noting in parallel family separation case where government argued due care exception that "family separation was established by executive policy—not by a statute or regulation—which is not covered by the due care exception"); *see also Gonzalez v. United States*, 2013 WL 942363, at *3-4 (C.D. Cal. March 11, 2013) (DCE only applies where a statute "require(s) a mandatory cause of action"); *Buchanan v. United States*, 915 F.2d 969, 970-71 (5th Cir. 1990) (holding that due care exception applies only to "actions mandated by statute or regulation").

O'STEEN &HARRISON
ATTORNEYS AT LAW

Because the government cannot point to a statute or regulation which mandates their luring Plaintiffs into the United States so that father and daughter could be separated, a law mandating their separation, or a statute preventing their reunification, the government's arguments seeking dismissal of this action pursuant to the due care exception must fail.

### III.    Plaintiffs' Tort Claims Satisfy the Broad Analogy Inquiry.

The government contends that Plaintiffs cannot establish subject matter jurisdiction under the FTCA because they cannot show, as required by the FTCA, that "a private individual under like circumstances would be liable under state law." *United States v. Muniz*, 374 U.S. 150, 153 (1963).  The Ninth Circuit requires courts "to find the most reasonable analogy" to private tortious conduct.  *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016); *LaBarge v. Mariposa Cty.*, 798 F.2d 364, 367 (9th Cir. 1986).

A cause of action for loss of child consortium is well recognized at Arizona law.  *Howard Frank, M.D., P.C. v. Superior Court*, 150 Ariz. 228, 230, 722 P.2d 955 (1986) ("It is apparent . . . that the award of consortium damages is a well-established remedy in Arizona for negligent injury to family relations.")  This right has been extended to children and parents.  *Reben v. Ely*, 146 Ariz. 309, 312, 705 P.2d 1360 (1985); *Villarreal v. State Dept. of Transportation*, 160 Ariz. 474, 477, 774 P.2d 213 (1989).  Private individuals have also been held liable for torts involving intentional infliction of emotional distress and negligence in Arizona, as found by this Court. *A.P.F. v. United States*, 492 F. Supp. 3d at 994 (citing *C.M.*, 2020 U.S. Dist. LEXIS 252691 and other District of Arizona cases).

O'STEEN&HARRISON
ATTORNEYS AT LAW

Plaintiffs' complaint clearly shows that a private individual under like circumstances and analogous to the government in the instant case would be liable under Arizona state law for intentional infliction of emotional distress, negligence, and loss of consortium.

**IV.     The Torts Pled by the Plaintiffs Do Not Seek Direct Liability Against the United States and Are Not Systemic Tort Claims.**

The FTCA authorizes suits against the U.S. for tortious acts committed by agents of the government. *Vander v. United States Dept. of Justice*, 268 F.3d 661, 663 (9th Cir. 2001); *Westbay Steel Inc. v. United States*, 970 F.2d 648, 651 (9th Cir. 1992). The government contends in its motion that Plaintiffs' complaint fails because it pleads institutional tort claims, rather than torts based on the misconduct of individual employees.

While the FTCA's waiver of sovereign immunity does not encompass claims for the tortious acts of the entire government, or agency, writ large, Plaintiffs complain of tortious conduct by specific agents of the Border Patrol who decided to open the gates of the border wall allowing entry to Plaintiffs for the purpose of separating them under false pretense. They complain of agents of the Border Patrol who decided to separate Plaintiffs under the false pretext that it was necessary to do so because Elias was to be charged with a crime and transferred to a jail facility. They complain of agents of ICE who purposefully decided not to reunite Jocelin with her father before he was deported, and agents of ICE who decided to prolong young Jocelin's detention and prevented not only her reunification with her father before he was deported but also her reunification with her Guatemalan family within a reasonable time after her detention.  All these acts were done by individual government agents acting to engineer intense terror on young Jocelin and her family as a means of deterring irregular immigration along the southern border.

O'STEEN & HARRISON
ATTORNEYS AT LAW

1
2
3
4
5
6

This exact government argument that Plaintiffs' complaint should be dismissed because the torts at issue were the conduct of the government at large, and not of individual agents of the government, was recently rejected by this Court in a parallel family separation case, and the Court should likewise do so again in the instant case for the same reasons expressed in its ruling last month.  *F.R.,* 2022 U.S. Dist. LEXIS 130606 at *17.

**CONCLUSION**

7
8
9
10
11
12
13
14
15
16
17
18

Young Jocelin and her father suffered serious and crippling trauma and distress when they were allowed entry into the United States by Border Patrol agents so that they could be shanghaied into service of the government's unconstitutional family separation policy.  Their father/daughter relationship, based on love, protection, and care, was torn asunder.  Jocelin was treated as a common criminal and purposefully held in protracted detention to prevent reunification in furtherance of this despicable policy.  In short, Plaintiffs, including an eight-year-old girl, were subjected by the United States to extreme mental and psychological torture.  The government admits as much in its motion, repudiating its "family separation policy," and blaming the harms suffered by the plaintiffs on the former administration.  Motion to Dismiss (Doc. 15) ¶ 8.

19
20
21
22
23
24
25
26

Yet the government once again asks this Court to sweep this gross and unconstitutional government misconduct - determined to be contrary to all norms of civilized society - under a judicial rug. *Ms. L.,* 310 F. Supp. 3d at 1144-46.  The government's motion for summary judgment trots out old arguments that have been repeatedly been rejected by this very Court.  The same reasoning applies in this case, and the Court in consistently applying the same law to the same arguments to reach the same result should send a message to the government to, in the interests of justice, cease filing such motions, which are designed only to obfuscate its unconstitutional

O'STEEN *&* HARRISON
ATTORNEYS AT LAW

conduct.  The government cannot reasonably admit the impropriety of its family separation policy on the one hand, while denying relief for the harm occasioned by its conduct on the other.

It has been more than four years since the government tore Plaintiffs' lives apart, physically, emotionally, and in spirit.  They continue to suffer the serious and severe effects of the government's conduct.  They live in abject poverty and are unable to obtain professional help to begin to remedy the government's assaults, and they are relying on the accountability provided by the FTCA to heal.  Rather than continue to pursue its dilatory efforts to avoid liability by means repeatedly rejected by this Court and continue to try to bury the human consequences of its family separation policy, the government should instead pursue justice in this case - which presents the most grievous of harms occasioned by its agents - using the Court's resources to mediate this case to conclusion in good faith.

DATED this 16th day of August, 2022.

**DE ANDA LAW FIRM**

*/s/ Ricardo de Anda w/permission*
Ricardo de Anda
*Attorneys for Plaintiff*

**O'STEEN & HARRISON, PLC**

_____
Lincoln Combs
Sophia J. Augeri
*Attorneys for Plaintiff*

O'STEEN & HARRISON
ATTORNEYS AT LAW

**CERTIFICATRE OF SERVICE**

I hereby certify that on August 16, 2022, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):


De Anda Law Firm
**Ricardo de Anda**
Plaza de San Agustin
212 Flores Ave.
Loredo, TX 78040
deandalaw@gmail.com
*Attorneys for Plaintiff*

**Gary M. Restaino**
United State Attorney
District of Arizona
**Kristina L. Morrison**
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Ste. 1800
Kristina.morrison@usdoj.gov
*Attorneys for Defendant*

Lincoln Combs
Sophia J. Augeri
**O'STEEN & HARRISON, PLC**
300 W. Clarendon Ave., Suite 400
Phoenix, Arizona 85013-3424
lcombs@vanosteen.com
saugeri@vanosteen.com
*Attorneys for Plaintiff*


*/s/ Donna Avilez*