1
2
3
4
5            **IN THE UNITED STATES DISTRICT COURT**
6               **FOR THE DISTRICT OF ARIZONA**
7

8   E.C.B., on behalf of himself and his minor
    child, J.R.,
9                                                    No. CV 22-00915 PHX CDB
                              Plaintiff,
10  v.                                               **ORDER**

11  United States of America,

12                             Defendant.

13

14          All of the parties have consented to the exercise of magistrate judge jurisdiction

15  over this matter, including the entry of final judgment. Before the Court is Defendant's

16  Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 15).

17      **I.      Background**

18          Plaintiff asserts claims pursuant to the Federal Tort Claims Act ("FTCA"). Plaintiff

19  seeks damages for himself and on behalf of his minor child, based on their forcible

20  separation and detention by agents of the United States government, and the conditions of

21  their detention and treatment by their custodians. The claims are based, *inter alia*, on the

22  following factual allegations:

23          In May 2018, federal officers forcibly separated Plaintiff Elias from
            his daughter Jocelin while they were detained in the Yuma County Detention
24          Center in Yuma, Arizona. Federal officers removed Jocelin [who was then
            eight years old] without informing Elias of his daughter's whereabouts.
25          When Elias asked immigration officers about his daughter's location, the
            officers told him they were not responsible for looking after her.[1]
26

27

28  _____
        [1] "Elias" and "Jocelin" are pseudonyms for Plaintiff and his minor daughter, both
    Guatemalan nationals who entered the United States seeking asylum.

> Unbeknownst to Elias, his daughter was sent across the country to a detention center in Miami, Florida without a parent, guardian, or family member. For two months she was confined inside the facility, which only heightened the trauma of confinement and separation. Elias was not permitted to contact her by telephone.
>
> As a result of the government's actions, Elias and Jocelin were separated for nearly five months. They were subjected to abuse and neglect, which caused them substantial and irreparable harm and trauma …

(ECF No. 1 at 1-2).[2]

Plaintiff asserts FTCA claims for intentional infliction of emotional distress, negligence, and loss of consortium. Defendant contends the Court lacks subject matter jurisdiction over Plaintiff's claims, arguing the claims fall within exceptions to the FTCA's waiver of sovereign immunity. After Defendant filed a reply in support of the pending motion to dismiss, Plaintiff filed a notice of supplemental authority (ECF No. 22), directing the Court's attention to *A.E.S.E. v United State of America and Management & Training Corporation*, 2022 WL 4289930 (D.N.M. Sep. 16, 2022), and Defendant filed a notice of supplemental authority (ECF No. 23), citing *B.A.D.J. v. United States*, 2022 WL 11631016 (D. Ariz. Sept. 30, 2022).

## II. Governing Law

### A. Rule 12(b)(1) of the Federal Rules of Civil Procedure

Motions to dismiss based on an exception to the FTCA's waiver of sovereign immunity are treated as motions to dismiss for lack of subject matter jurisdiction and reviewed under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *Garcia v. United States*, 526 F. Supp. 3d 576, 581 (D. Ariz. 2021). Defendant's motion to dismiss is a facial attack on the Complaint. *See A.P.F. v. United States,* 492 F. Supp. 3d 989, 993-94 (D. Ariz. 2020), *citing Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In ruling on such a motion, the Court accepts the allegations of the Complaint as true and affords Plaintiff the benefit

---

[2] The Government never brought charges against Plaintiff, who was deported on or about May 21, 2018, after twenty-one days in detention. (ECF No. 1 at 27).

of all favorable inferences that can be drawn from the alleged facts. *E.g.*, *A.P.F.*, 492 F. Supp. 3d at 994.  In the context of a Rule 12(b)(1) challenge in a FTCA case, the plaintiff has the burden of establishing the alleged facts place their claims within the FTCA's waiver of immunity, and the United States bears the burden of establishing the applicability of an exception to the waiver of immunity. *See*, *e.g.*, *Bailey v. United States*, 623 F.3d 855, 859 (9th Cir. 2010); *Prescott v. United States*, 973 F.2d 696, 701-02 (9th Cir. 1992); *A.P.F.*, 492 F. Supp. 3d at 494.

### B.     Federal Tort Claims Act

The United States is immune from liability absent its consent, and the terms of that consent define the Court's jurisdiction to entertain a suit against the United States. *E.g.*, *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The FTCA waives the Government's immunity "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). However, the FTCA's general waiver of immunity is subject to several exceptions. *E.g.*, *Dolan v. United States Postal Serv.*, 546 U.S. 481, 485 (2006); *A.P.F.*, 492 F. Supp. 3d at 994. The waiver does not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). These are commonly referred to as the "due care exception" and as the "discretionary function exception."

### III.   Analysis

Defendant argues the FTCA does not waive sovereign immunity for the claims alleged in the Complaint. Two of Defendant's arguments involve the FTCA's general waiver of immunity; accordingly, Plaintiff bears the burden of showing the claims fall under the FTCA and the Court therefore has subject matter jurisdiction over the claims. *See C.M. v. United States*, 2020 WL 1698191, at *2 (D. Ariz. Mar. 30, 2020), *citing*

*Prescott v. United States*, 973 F.2d 696, 701-02 (9th Cir. 1992). Two of Defendant's arguments involve the FTCA's statutory exceptions, and Defendant bears the burden of establishing the exceptions apply in this case. *Id.* Regarding the FTCA's general waiver, Defendant argues there is no private analogue for the allegedly tortious misconduct of which Plaintiff complains. Defendant also asserts the Complaint attempts to bring claims based on the conduct of entire federal agencies. i.e., "systemic" or "institutional" tort claims, which are not actionable under the FTCA. With regard to the statutory exceptions to the FTCA's waiver of sovereign immunity, Defendant contends the allegedly tortious misconduct falls within the due care and discretionary function exceptions.

### A.   General waiver of immunity

### 1.   The "private person" analogue

The FTCA waives sovereign immunity only with regard to "the negligent or wrongful act or omission of any employee of the Government," occurring in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). To establish subject matter jurisdiction under the FTCA, a complaint must sufficiently allege that "a private individual under *like* circumstances would be liable under state law …" *United States v. Muniz*, 374 U.S. 150, 153 (1963) (emphasis added), *citing* 28 U.S.C. § 2674. The FTCA does not require *identical* or the *same* circumstances, only *like* circumstances. *See Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955); *Xue Lu v. Powell*, 621 F.3d 944, 947 (9th Cir. 2010). Recognizing that "the federal government could never be exactly like a private actor," the Ninth Circuit Court of Appeals' jurisprudence requires a court only "to find the most reasonable analogy" to a circumstance where a private individual would be liable, generally referred to as a "private analogue." *Dugard v. United States*, 838 F.3d 914, 919 (9th Cir. 2016) (internal quotations omitted). *See also United States v. Olson*, 546 U.S. 43, 45-46 (2005); *A.P.F.*, 492 F. Supp. 3d at 994, *citing LaBarge v. Mariposa Cnty*, 798 F.2d 364, 367 (9th Cir. 1986).

1    Defendant argues the Court does not have subject matter jurisdiction because the
2    governmental conduct that Plaintiff challenges has no private analogue, asserting the
3    claims arise out of federal statutory authority that only the federal government possesses.
4    (ECF No. 15 at 22). Defendant contends: "Because only the federal government has the
5    authority to enforce federal criminal and immigration laws and make detention
6    determinations, there is no private-person analogue that would support a claim under the
7    FTCA." (*Id.*).   Defendant argues that, because Plaintiff "does not dispute that he was
8    lawfully held in secure adult immigration detention pending his immigration proceedings,"
9    his claims "are essentially a challenge to where and with whom deportable noncitizens are
10   detained. Such decisions are made pursuant to federal statutory authority and are in the sole
11   province of the federal government; there is no private person counterpart." (ECF No. 19
12   at 9-10).

13   The Arizona District Court has rejected Defendant's argument regarding a private
14   analogue and recognized the viability of loss of consortium and intentional infliction of
15   emotional distress claims brought under the FTCA in cases factually similar to the instant
16   matter. *See B.A.D.J.*, 2022 WL 11631016, at *4-5;[3] *F.R. v. United States*, 2022 WL
17   2905040, at *3 (D. Ariz. July 22, 2022); *C.M.*, 2020 WL 1698191, at *2. The Arizona
18   District Court has also recognized the viability of a negligence claim brought under the
19   FTCA based on a government employee's choice of a place of confinement for one in
20   federal custody. *See Estate of Smith v. Shartle*, 2020 WL 1158552, at *1 (D. Ariz. Mar. 10,
21   2020). The Court finds persuasive the decisions issued in *B.A.D.J.*, *F.R.*, and *C.M.*, and
22   finds Plaintiff has plausibly established their claims fall within the FTCA's waiver of

23

24   _____

       [3] Arizona defines loss of consortium as "a loss of capacity to exchange love,
       affection, society, companionship, comfort, care and moral support." *Pierce v.*
25     *Casas Adobes Baptist Church*, 782 P.2d 1162, 1165 (Ariz. 1989). The focus of loss
       of consortium is on the interference with the normal relationship between parent
26     and child. *Bickler v. Senior Lifestyle Corp.*, No. CV-09-00726-PHX-DGC, 2010
       WL 2292985, at *6 (D. Ariz. June 8, 2010). Separating a mother from her daughter
27     would satisfy this definition under Arizona law. Therefore, the Court agrees with
       Plaintiffs that sufficient private analogues exist to permit their FTCA claims.
28   *B.A.D.J. v. United States*, 2022 WL 11631016, at *5 (D. Ariz. Sept. 30, 2022).

1   sovereign immunity with regard to the requirement that a private individual under like
2   circumstances would be liable under state law.

3   **2.      Direct, institutional, or systemic tort liability**

4   The FTCA authorizes suits against the United States for the tortious acts or
5   omissions of its employees and agents. *See Vander v. United States Dep't of Just.*, 268 F.3d
6   661, 663 (9th Cir. 2001); *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 651 (9th Cir.
7   1992). The FTCA does not waive sovereign immunity for the tortious acts or omissions of
8   the entire government or an entire federal agency. *See* 28 U.S.C. § 2671; *Jones v. United*
9   *States*, 2021 WL 5505787, at *4 (D. Ariz. Nov. 24, 2021).

10  Defendant argues the Complaint alleges "institutional tort claims" rather than torts
11  based on the misconduct of individual employees. *Inter alia*, the Complaint alleges:

12  … Before entering Arizona, Elias and others in his group spoke with
13  immigration officials who allowed them to cross the border. Shortly after
    crossing the border, however, CBP agents apprehended them, throwing them
14  to the ground. … A CBP agent proceeded to forcibly throw Elias and Jocelin
    into a vehicle, injuring Elias's knee.
15                                                    ***
16  After taking them into custody, the CBP agents took Elias and Jocelin
    to the Yuma County Detention Center in Yuma, Arizona where immigration
17  officers confiscated their belongings, including Elias's identification card
18  and his daughter's birth certificate. At the time they were apprehended,
    Jocelin developed a high fever. Elias and Jocelin were forced to wait
19  overnight in the detention center before the facility provided Jocelin with any
20  medical care. When Jocelin finally received medical attention, the doctor
    prescribed her medication. Shortly thereafter, however, the immigration
21  officers confiscated the medication. ….
22  Elias and Jocelin were locked in a cell with about 90 other people for
    three days at Yuma. The cell was so cold that it has been colloquially referred
23  to as "*la hielera*," which means the "icebox" in Spanish. There were no beds
24  in *la hielera*. There was not enough space to lay down on the floor and there
    were not enough aluminum blankets for all detainees. Everyone shared a sink
25  and a toilet. …
26  … The only food Elias and Jocelin were given each day was one
    dehydrated ramen noodle cup, uncooked and without water. The only water
27  available was from a sink near the toilet. At some point in time, Elias asked
    the immigration officers for water, and the immigration officers responded
28

- 6 -

by asking him, "Who told you to come here?" Elias remained quiet and neither he nor Jocelin was given any water.

On a separate occasion, the immigration officers asked Elias if he came to the United States to work. Elias responded that there were people in Guatemala who did not like him. Rather than assess whether Elias had a basis for an asylum claim based on a well-founded fear of persecution, as required by law, the immigration officers proceeded to tell Elias that whether people liked him or not was not "their problem."

\*\*\*

… On the third day of their detention, immigration officers asked him to sign several documents. The documents were in English and the immigration officers did not explain their contents or their import. Even though he did not understand what the documents said, when the immigration officers became aggressive and demanded that he sign, Elias relented out of fear.

\*\*\*

…The immigration officers told Elias that Jocelin was going to be taken to Houston, Texas and that he would be sent there after her. Elias would later learn that the immigration officers lied to him. That was the last time Elias saw his daughter for 4 months and 22 days.

\*\*\*

After his daughter was taken from him, Elias was not informed of his daughter's whereabouts, and all his requests for information were ignored. He was not allowed to use the phone to try to locate her. When he asked immigration officers for his daughter's location, they told him they were not responsible for looking after her. …

\*\*\*

… He was also subject to unnecessarily cruel and inhumane treatment. He was not given an opportunity to take a shower or brush his teeth. He found it difficult to sleep and could not eat the uncooked noodles he was given. Despite experiencing diarrhea for three days and vomiting, he was denied any medical treatment.

At some point in time, Elias fainted due to lack of food. The other individuals detained with Elias alerted the immigration officers that Elias had fainted, but the immigration officers did not provide him with medical care.

\*\*\*

… On a separate occasion, Elias and other detainees in *la hielera* were praying in a corner when the immigration officers approached them and accused them of plotting an escape from the facility. The immigration officers proceeded to place Elias in a separate holding cell for two days. Elias refers to this separate holding cell as the "*perrera*," a room where they detained individuals who were "misbehaving." The room was the size of a restroom and was crammed with more than twenty people in it. There was

barely any room to stand, much less sit or sleep on the floor. Elias did not receive food while he was in the *perrera* and was forced to drink water from the sink.

***

On or about May 3, 2018, Jocelin was forcibly separated from her father in Yuma, Arizona and sent to a detention center in Miami, Florida, without a parent, guardian, or family member. Jocelin was terrified. Compounding her fear from being forcibly removed from her father, she was frightened of flying on an airplane for the first time. When she arrived at the detention center, she was asked to take a shower. After she showered, she did not have any clothes to change into and was forced to wait naked for an hour until immigration officers brought her clothes. Immigration officers then gave her vaccinations without any prior authorization from her parents. After she was given the vaccinations, she became sick and was sent to the hospital. …

… Jocelin was sent to school at the detention center. She was not able to play outside because she did not have any tennis shoes. Jocelin asked for tennis shoes, but the immigration officers told her that there were no tennis shoes there. …

***

Due to Jocelin's severe depression and inconsolable crying from being forcibly removed from her father, a case manager contacted Jocelin's mother in Guatemala and asked whether they could put Jocelin up for adoption. Shocked by the request, her mother refused and demanded that the immigration officers send Jocelin back to Guatemala. In late summer 2018, Jocelin received a new case manager who informed her that she was going back to Guatemala… On or around September 25, 2018, Jocelin was reunited with her family, nearly five months after the forced separation.

(ECF No. 1 at 23-28).

The Government cites *Lee v. United States*, 2020 WL 6573258, at *6 (D. Ariz. Sept. 18, 2020), in characterizing Plaintiff's claims as "attribut[ing] the alleged tortious conduct to the government as a whole, often referring to 'the government' rather than specific tortious conduct on the part of specific federal employees." (ECF No. 15 at 23-24). In *Lee*, the plaintiff's allegations were found "too vague and conclusory" to support a FTCA claim, because the plaintiff failed to specify any employee's role in the alleged negligent act. *See* 2022 WL 2905040 at *5-6. This matter is distinguishable from *Lee*. The Complaint does contain condemnations of various administration and agency policies regarding

immigration and the initiation of programs bearing on the treatment of those entering the United States seeking asylum, including the separation of parents from their children, such as the "El Paso Initiative," the "family separation policy," and the "Zero-Tolerance Policy." To the extent the Complaint can be read to assert claims against the United States for the tortious misconduct of the government itself or government agencies, i.e., claims based on executive orders, memoranda, or policies regarding the separation of families entering the United States without authorization, the Court would be correct in dismissing the claims for lack of subject-matter jurisdiction because the FTCA waives sovereign immunity only for the tortious misconduct of individual government employees. However, the Complaint can plausibly be read to present claims predicated on the tortious misconduct of individual government employees (as quoted *supra*) and, accordingly, the Court has subject-matter jurisdiction over Plaintiff's claims against the United States for the alleged tortious misconduct of specific, individual employees.

**B.      Statutory exceptions from waiver of sovereign immunity**

**1.      Due care exception**

The due care exception to the FTCA's waiver of sovereign immunity bars claims "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid …" 28 U.S.C. § 2680(a). The District of Arizona has regularly followed the two-prong test established by *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005), to determine whether the due care exception applies. *See*, *e.g.*, *A.P.F.*, 492 F. Supp. 3d at 995-96; *E.S.M. v. United States*, 2022 WL 11729644, at \*5 (D. Ariz. Oct. 20, 2022); *F.R.*, 2022 WL 2905040, at \*4; *C.M.*, 2020 WL 1698191, at \*3. Pursuant to *Welch*, the due care exception applies if a statute or regulation "specifically proscribes a course of action for an officer to follow," and "the officer exercised due care in following the dictates of that statute or regulation." 409 F.3d at 652.

The *A.P.F.* court, applying the *Welch* test, concluded:

> The United States cites no statute or regulation requiring the detention of individuals who are "amenable to prosecution" in facilities different from those who are not "amenable to prosecution," or any statute more generally requiring the separation of Plaintiffs upon their entry into the country. [] Nor could it: the family separations were conducted pursuant to executive policy, not pursuant to any statute or regulation. [] Actions taken pursuant to executive policy are not shielded by the due care exception. *Garcia-Feliciano v. United States*, [] 2014 WL 1653143, at *4 n.8 (D.P.R. Apr. 23, 2014) (due care exception "would not apply here, however, because a policy—not a statute or regulation—pr[e]scribed the deputy's conduct"). The United States has failed to prove that the due care exception applies.

492 F. Supp. 3d at 995-96 (internal citations omitted).

In subsequent cases, the District of Arizona has followed *A.P.F.* in rejecting the argument presented by Defendant with regard to the due care exception, concluding that actions taken pursuant to executive policy are not shielded by this exception to the FTCA's waiver of sovereign immunity. *See B.A.D.J.*, 2022 WL 11631016, at *4; *A.I.I.L. v. Sessions*, 2022 WL 992543, at *3-4 (Mar. 31, 2022), *citing C.M.*, 2020 WL 1698191, at *3.[4]  This argument has also been rejected by other federal district courts. *See D.J.C.V. v. United States*, ___ F. Supp. 3d ___, 2022 WL 1912254, at *18 (S.D.N.Y. June 3, 2022); *A.E.S.E.*, 2022 WL 4289930, at *14; *Wilbur P.G. v. United States*, 2022 WL 3024319, at *5 (N.D. Cal. May 10, 2022); *Nunez Euceda v. United States*, 2021 WL 4895748, at *4 (C.D. Cal. Apr. 27, 2021).

Additionally, Defendant fails to address how its employees took due care in following the dictates of any statute or regulation it cites, i.e., how the individual officers took due care to separate Plaintiff from his daughter without causing physical harm or

---

[4] With regard to the statute cited by Defendant in this matter, the *A.I.I.L.* court accepted the plaintiff's argument that "the TVPRA, the only statute which mandates the transfer of minors to HHS custody, concerns children who arrive without their parents, but the children here arrived with their parents, were separated by the government, subsequently labeled 'Unaccompanied Minor Children,' and transferred to HHS custody." *A.I.I.L. v. Sessions*, 2022 WL 992543, at *4 (D. Ariz. Mar. 31, 2022) ("Because none of the statutory provisions cited by the government expressly mandate enforcement of a family separation policy, the due care exception does not apply.").

1   severe emotional distress, or how it housed father or daughter in appropriate conditions

2   and provided adequate medical care, food, and water. The Court finds Defendant has not

3   satisfied its burden to establish that the due care exception is applicable.

4         **2.**      **Discretionary function exception**

5         The discretionary function exception bars jurisdiction over a claim that is "based

6   upon the exercise or performance or the failure to exercise or perform a discretionary

7   function or duty on the part of a federal agency or an employee of the Government, whether

8   or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Supreme Court has

9   held that this exception to the FTCA's waiver of sovereign immunity applies when the

10  federal official's actions involve an element of judgment or choice, and were based on

11  considerations of public policy. *See United States v. Gaubert*, 499 U.S. 315, 322-23 (1991).

12        Defendant argues the decisions to detain Plaintiff in a secure adult detention facility,

13  to separate him from his daughter, and to subject him and his daughter to particular

14  treatment while in custody, are protected by the discretionary function exception because

15  making detention determinations and setting particular conditions of confinement are

16  discretionary and susceptible to policy analysis. However, notwithstanding Defendant's

17  discretion to make detention determinations and "set" conditions of confinement, the Ninth

18  Circuit has held the discretionary function exception does not protect unconstitutional

19  governmental conduct, reasoning that government officials have no discretion to violate

20  the Constitution. *See*, *e.g.*, *Nurse v. United States*, 226 F.3d 996, 1002 & n.2 (9th Cir.

21  2000); *A.P.F.*, 492 F. Supp. 3d at 996; *B.A.D.J.*, 2022 WL 11631016 at *3 (disagreeing

22  with *Nurse* but recognizing and following this precedent). Accordingly, if Plaintiff

23  plausibly alleges constitutional violations, the discretionary function exception does not

24  apply. *See Nurse*, 226 F.3d at 1002.

25        Plaintiff plausibly alleges that the separation of father and child, the manner in

26  which this was done, and the conditions of confinement to which they were subjected,

27  violated their federal constitutional rights, including the substantive due process right to

28  family integrity. To the extent Plaintiff's claims are based on the conditions of his

confinement, including the failure to provide Plaintiff with water and adequate nutrition, and the failure to provide both Plaintiff and his daughter with necessary medical care, Plaintiff has plausibly alleged the government officials' conduct violated the Eighth Amendment. These allegations place the relevant conduct outside the discretionary function exception for pleading purposes, notwithstanding any lack of complete clarity with regard to the exact constitutional protections that were allegedly violated. In *Nurse*, the Ninth Circuit reversed the dismissal of an FTCA claim based on the discretionary function exception because the plaintiff had alleged the governmental conduct was unconstitutional without specifying what constitutional mandate the officials violated. *See* 226 F.3d at 1002 n.2. If "bare allegations" were sufficient to overcome a motion to dismiss in *Nurse*, the Court sees no reason why Plaintiff should be held to a higher standard here; other judges in this District have applied a plausibility standard to allegations of unconstitutional conduct at the motion to dismiss stage. *See*, *e.g.*, *A.P.F.*, 492 F. Supp. 3d at 996 (denying a motion to dismiss based on the discretionary function exception where the plaintiffs plausibly alleged the government's separation of their families violated their constitutional rights); *F.R.*, 2022 WL 2905040, at *5-6; *A.I.I.L.*, 2022 WL 992543, at *4 (denying a motion to dismiss based on the discretionary function exception where plaintiffs plausibly alleged the government's conduct violated their constitutional rights); *C.M.*, 2020 WL 1698191, at *4 (denying a motion to dismiss based on the discretionary function exception where the plaintiffs plausibly alleged the Government's separation of their families violated their constitutional rights). For pleading purposes, Plaintiffs have adequately alleged the unconstitutionality of the conduct at issue. Thus, the United States has not established the discretionary function exception applies.

## IV.    Conclusion

Plaintiff has demonstrated that "a private individual under like circumstances would be liable under state law" for the allegedly tortious conduct committed by employees of the United States delineated in the Complaint. Additionally, the Complaint can plausibly be read to assert claims predicated on the tortious misconduct of individual government

employees, rather than asserting institutional torts. Defendant has failed to meet their burden of demonstrating a statutory exception to the FTCA's waiver of immunity.

Accordingly,

**IT IS ORDERED that** Defendant's motion to dismiss for want of subjection matter jurisdiction (ECF No. 15) is **denied**.

Dated this 8th day of November, 2022.

Camille D. Bibles
United States Magistrate Judge